UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith, Inc., : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 3:07cv246 (JBA) |
| : | |
| Brendan M. Reidy, John C. Mahon, : | |
| and Amy J. Berg, : | |
| Defendants. : | |

**RULING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION [DOC. # 4]**

Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") initiated this action and filed the instant Motion for Temporary Restraining Order and Preliminary Injunction [Doc. # 4] for redress in the form of temporary injunctive relief pending commencement of an arbitration to be held pursuant to Rule 10335(b) of the National Securities Association of Securities Dealers Code of Arbitration Procedure on the issue of alleged non-compliance by their former employees, Brendan M. Reidy, John C. Mahon, and Amy J. Berg, of the Protocol for Broker Recruiting ("Protocol") entered into between Merrill Lynch, Morgan Stanley DW, Inc. ("Morgan Stanley) (where defendants are currently employed) and other firms. This action claims defendants' conduct at the time of their resignation from Merrill Lynch violated the Protocol, thus exposing them to liability for alleged breach of contractual, statutory, and common law obligations. Defendants have opposed plaintiff's

1

Motion [Doc. # 10], plaintiff has filed a supplemental memorandum [Doc. # 19], and both parties have submitted factual affidavits. At a telephonic conference on February 20, 2007, counsel requested that the Court determine plaintiff's entitlement to a temporary restraining order on the papers, without a hearing. Plaintiff's additional request for preliminary injunction is not pressed.  Because the Court concludes that plaintiff has offered insufficient evidence demonstrating a likelihood of success on the issue of whether defendants breached the Protocol, and thus also cannot show risk of irreparable harm or a balance of hardships tipping in its favor, plaintiff's Motion will be denied.

**I.    Introduction**

This dispute arises out of the resignation of defendants from Merrill Lynch on February 2, 2007 to join Morgan Stanley. Both Merrill Lynch and Morgan Stanley are signatories to the Protocol which provides that if a financial advisor abides by the procedures therein upon resignation from a signatory firm, he or she may leave that firm for another with certain client information without liability to the prior firm.  Specifically, the Protocol provides, inter alia:

> The principal goal of the following protocol is to
> further the clients' interests of privacy and freedom
> of choice in connection with the movement of their
> Registered Representatives ("RRs") between firms.  If
> departing RRs and their new firm follow this protocol,
> neither the departing RR nor the firm that he or she

> joins would have any monetary or other liability to the
> firm that the RR left by reason of the RR taking the
> information identified below or the solicitation of the
> clients services by the RR at his or her prior firm . . .
>
> \* \* \*
>
> When RRs move from one firm to another and both firms
> are signatories to this protocol, they may take only
> the following account information: client name,
> address, phone number, email address, and account title
> of the clients that they serviced while at the firm
> ("the Client Information") and are prohibited from
> taking any other documents or information. Resignations
> will be in writing delivered to local branch management
> and shall include a copy of the Client Information that
> the RR is taking with him or her.  The RR list
> delivered to the branch also shall include the account
> numbers for the clients serviced by the RR. . . .

Protocol [Doc. # 10-2].  Both parties recognize that if defendants did not breach the Protocol by, inter alia, failing to provide Merrill Lynch with the required customer information and/or taking with them more information than is permitted under the Protocol, then no liability can attach.

Merrill Lynch claims that defendants breached the Protocol by failing to provide adequate customer information to it upon their resignation, by taking more client information than permitted, including account numbers, and by accessing and/or taking prohibited documents with them upon resignation, pointing to, inter alia, computer access records and printing history which Merrill Lynch claims documents suspicious conduct. Defendants dispute plaintiff's contentions and claim that they provided Merrill Lynch with the information required and took

only information permitted under the Protocol.  The specific disputes, and the evidence to support them, is addressed below.

**II.  Standard**

Issuance of preliminary injunctive relief, such as a TRO or preliminary injunction, is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005).  In order to obtain such relief, a party must demonstrate: (1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) a sufficiently serious question going to the merits and a balance of hardships tipping decidedly in the moving party's favor.  See Brennan's, Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 129 (2d Cir. 2004).

**III. Discussion**

As noted above, if plaintiff cannot demonstrate that defendants breached the Protocol, then no liability attaches to defendants or their new employer, Morgan Stanley (not a party to this case), and plaintiff has shown neither irreparable harm nor likelihood of success on the merits.  Plaintiff makes claims of multiple violations, relying on affidavit evidence concerning defendants' activity and computer records immediately prior to their departure, which is rebutted by defendants' evidence, and thus plaintiff is unable to demonstrate likelihood of success on

the merits on the issue of defendants' compliance with the Protocol entitling them to take with them certain client information and to have certain client contact upon resignation. On the basis of the evidence summarized below, it is apparent that defendants substantially complied with the Protocol requirement of providing customer information to Merrill Lynch, there is legitimate dispute about the scope of the client information defendants retained upon resignation and whether defendants contacted clients prior to their departure, and plaintiff's claim that defendants improperly retained client account numbers is largely speculative.  Thus Merrill Lynch has not demonstrated risk of irreparable harm, likelihood of success on the merits, or sufficiently serious questions about the merits of the case coupled with a balance of the hardships in its favor.

   First, plaintiff contends that defendants failed to provide the required client contact information because the "attached list" referenced in defendants' resignation letters was missing and was not where defendants subsequently informed Merrill Lynch it could be located – in Mahon's top left desk drawer.  Feld Aff. ¶ 6. Defendants thereafter correctly informed Merrill Lynch that the list was in Mahon's top center desk drawer.  Id.  Merrill Lynch further states that even once it located the list, its form was two sets of spreadsheets from which complete client information could be gleaned only by reading the pages side-by-

side as each individual client's information stretched from one page to another.  Id.  Defendants contend that they made good faith efforts to comply with the Protocol inasmuch as Mahon left copies of account statements and the customer list with account numbers in his desk at Merrill Lynch, and corrected the misinformation about precise drawer location immediately upon realization.  Mahon Aff. ¶¶ 21-22; Mahon Suppl. Aff. ¶ 7.  Defendants further explain that the awkward formatting of the customer list was necessitated by the lengthy client names of religious orders, and thus each client's information stretched across two pages to be read by laying pages side-by-side.  Reidy Aff. ¶¶ 12-14; Berg Aff. ¶ 10.  Defendant Berg also attests that she made two copies of the client list, one with account numbers which was left for Merrill Lynch and one without account numbers which was retained by defendants.  Berg Aff. ¶ 10.

Merrill Lynch also contends that defendants retained client information beyond that permitted by the Protocol, including client documents.  Feld contends she has "good reason to conclude" that defendants retained more information than permitted, and she and Gerald Weber refer to the printing log of Reidy who printed at least 700 pages in his last week at Merrill Lynch and 400 pages on the day of his resignation, to the activity of defendant Berg in downloading and saving to disk more documents in the last month of her employment at Merrill Lynch

6

than in previous months, and to the fact that the "Connect to Merrill" icon on a personal laptop computer was used to access client documents on February 5, 2007, after defendants' departure.  Feld Aff. ¶¶ 9-12; Weber Aff. ¶¶ 4, 6-9.  In response, defendants reiterate that they left Merrill Lynch with only the information permitted, Mahon Aff. ¶ 28, and that their computer and printing activity was necessitated by the annual performance reviews for 50 clients which they were working on in the month prior to their resignation, Mahon Aff. ¶ 11; Reidy Aff. ¶¶ 8-10, including responding to a request on February 2, 2007 from a client fiduciary, id.  Feld claims that she was required to approve all client correspondence sent by Mahon, Reidy, or Berg and that she did not approve any such correspondence on February 2, 2007.  Feld Suppl. Aff. ¶ 5.  While this may show violation of some Merrill Lynch policy, it does not demonstrate violation of the Protocol.  Furthermore, defendants explain that beginning in December 2006, Berg had personal family commitments that were known to Merrill Lynch management (including Feld) necessitating her working from home during late 2006 and 2007, and that to enable her to work from home she downloaded documents and other information, including those documents identified in plaintiff's affidavits.  Mahon Aff. ¶¶ 14, 16-17; Berg Aff. ¶ 7.[1]

---

[1] Berg also attests that she destroyed the disk she used to download client documents because she knew the Protocol did not permit her to retain them after her resignation and she did not

Feld claims that if Berg was working from home, this arrangement should have been approved by Feld herself or Louise Neal, Berg's supervisor, rather than Mahon.  Again, this may show a violation of Merrill Lynch policy but it does not demonstrate breach of the Protocol.  Defendants also acknowledge the documents referenced in the affidavit of Mr. Weber, explaining that one was a generic blank document, one ("MS Attorney Instructions") was confidential advice from Mahon's attorney, and the others were spreadsheets of client information permitted under the Protocol.  Mahon Aff. ¶¶ 24, 27.  Lastly, Mr. Mahon claims the personal laptop and states that while he may have used the "Connect to Merrill" icon on the morning of February 2, 2007, before his resignation, he did not do so after resigning because he knew he was required to comply with the Protocol and assumed his remote access would be cut off. Mahon Aff. ¶ 27.

Plaintiff also contends that defendants deleted all client contact information provided in its Wealth Management workstations and disabled their Microsoft Outlook contacts databases.  Feld Aff. ¶ 7.  While plaintiff states that it was thus unable to obtain client information because it was only provided with an unintelligible list, defendants have explained in their affidavits the necessity of the formatting in the 50-

---

know the shredder at Merrill Lynch could destroy a computer disk. Berg Aff. ¶ 9.

page spreadsheet document provided to Merrill Lynch, and it does not appear to have been unintelligible. Defendants also explain that brokers are not required to use Microsoft Outlook to store client information, and Mssrs. Mahon and Reidy attest that they used Outlook primarily for personal purposes and deleted their Outlook databases in order to protect personal information such as personal banking account numbers and social security numbers. Mahon Aff. ¶ 23; Mahon Suppl. Aff. ¶¶ 3-5; Reidy Aff. ¶¶ 7, 11.

Lastly, plaintiff claims Mahon contacted and solicited Merrill Lynch clients prior to resigning, pointing to Feld's Affidavit in which she states she has "determined" that Mahon contacted a client identified as "J.C." with the information that he was planning to leave Merrill Lynch for Morgan Stanley and provided the client with account transfer forms. Feld Aff. ¶ 8. Feld also attests that Merrill Lynch received account transfer forms dated February 3, 2007 and it is "highly unusual" to receive such forms within 24 hours of a registered representative's resignation. Id. While Feld has articulated her "concern" that defendants may have contacted and/or solicited clients prior to their resignations, she offers no basis for her knowledge with respect to the "J.C." client, and her statements do not rebut Mahon's statement that he does not know who "J.C." is nor does he recall speaking with any Merrill Lynch client whose initials are "J.C." Mahon Aff. ¶ 26. In fact, defendants

all attest that they did not contact or solicit any clients prior to resigning, id.; Reidy Aff. ¶ 7; Berg Aff. ¶ 13, and Mahon clarifies that he had meetings with clients on February 3, 2007 (after his resignation), at which time the clients signed the account transfer forms Feld refers to in her affidavit.  Mahon Aff. ¶ 26.

Thus, because the evidence shows that defendants substantially complied with the Protocol with respect to providing the required information to Merrill Lynch upon their departure, and because plaintiff lacks persuasive evidence that defendants likely took more information than permitted and/or contacted or solicited clients prior to resigning, it has not shown a likelihood of success on the merits that defendants violated the Protocol thus exposing them to liability on the breach of contract and other claims asserted by plaintiff, nor can plaintiff demonstrate risk of irreparable harm or a balance of hardships tipping in its favor.

**IV.  Conclusion**

For the foregoing reasons, plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. # 4] is DENIED.  As this dispute has been submitted to arbitration, this case will be administratively CLOSED pending final determination in that forum.  Either party may reinstate this case to the active docket by motion filed no later than 30 days following

issuance of the final arbitration decision.

                                    IT IS SO ORDERED.

                                /s/
                      Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 27th day of February, 2007.**